**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

KENNETH DEAN,

　　Defendant - Appellant.

No. 04-7036

(D.C. No. 03-CR-14-WH)

(E. D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY**, and **HARTZ,** Circuit Judges.

Defendant Kenneth Dean appeals his conviction and sentence for attempted bank robbery in violation of 18 U.S.C. § 2113(a). He argues that (1) the evidence of guilt was insufficient and (2) his sentencing enhancements were based on facts not proven to a jury beyond a reasonable doubt as required by *Blakely v.*

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

*Washington*, 124 S. Ct. 2531 (2004). We exercise jurisdiction under 28 U.S.C. § 1291, and affirm Defendant's conviction and sentence.

## I. BACKGROUND

According to bank teller Molly Mounce's trial testimony, on January 9, 2003, Defendant walked into BancFirst in McAlester, Oklahoma, and said to her, "I want all your money." R. Vol. II at 21. Initially confused, she responded that he would have to write a check. Defendant then "started reaching across his chest with his right arm and he said, 'I don't think you understand. I have a gun; I want all your money; . . . I'm going to blow your damn head off.'" *Id.* Ms. Mounce stated that Defendant wore an unbuttoned sports jacket, and his right hand was across his body and inside the jacket. Defendant repeatedly told her, "Hurry up, I'm going to blow your head off." *Id.* at 23. She was terrified and thought Defendant was going to shoot her. Ms. Osborne, a nearby co-worker, described Defendant's voice as "loud and serious" *Id*. at 37. In fumbling around with the bags and the money, Ms. Mounce gave Defendant an empty bag. He threw it down and then left the bank. He was apprehended in the parking lot next to the bank. No gun was recovered; he was carrying only a cane, a pack of cigarettes, a lighter, and some change. Ms. Mounce testified that she and Ms. Osborne had twice seen Defendant walking across the bank's parking lot earlier that morning.

Three days before the robbery Defendant made four different withdrawals, totaling $649, on his BancFirst ATM card; on the day of the robbery Defendant's account was $39.48 overdrawn. Miron Dean, Defendant's nephew, testified that on either January 6th or 7th he had a conversation with Defendant in which Defendant explained that he was in a bind because he had gambled away his money and he asked his nephew to rob a bank with him. Before Miron Dean testified, he had pleaded guilty to three bank robberies and was awaiting sentencing.

At the time of his arrest Defendant was 71 years old and had been partially paralyzed by a stroke. He has no use of his left arm, walks very slowly and only with a cane, and has numerous other health problems.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Defendant argues that the elements of 18 U.S.C. § 2113(a) were not proved with sufficient evidence. The Government must prove beyond a reasonable doubt that the defendant attempted to take, by intimidation, property in the possession of a bank. *See* 18 U.S.C. § 2113(a); *United States v. Bishop*, 890 F.2d 212, 219 (10th Cir. 1989). Relying mostly on his frail appearance and physical handicaps, Defendant stresses that the evidence does not adequately prove intimidation.

"In reviewing the sufficiency of the evidence to support a conviction, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the jury's verdict." *United States v. Espinoza*, 338 F.3d 1140, 1146-47 (10th Cir. 2003). "We will reverse the verdict only if no rational jury could have found Defendant guilty beyond a reasonable doubt." *Id*. at 1147.

In *United States v. Monholland*, 607 F.2d 1311, 1318 (10th Cir. 1979), we stated that "mere intention to commit a specified crime does not amount to an attempt. It is essential that the defendant . . . [also] do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." In later cases "we required a 'substantial step' toward the commission of the crime, which we defined as an act that is 'strongly corroborative of the firmness of the defendant's criminal intent.'" *United States v. Prichard*, 781 F.2d 179, 181 (10th Cir. 1986) (quoting *United States v Bunney*, 705 F.2d 378, 381 (10th Cir. 1983)). In addressing a claim of insufficient evidence in the context of an attempted bank robbery "we must determine whether [Defendant's] objective acts . . . strongly corroborate his intent to [take, by intimidation, property in the possession of] the bank." *Id.*

The jury was presented with evidence that (1) Defendant asked his nephew to rob a bank with him only a few days before his arrest; (2) the bank tellers saw him outside the bank two other times the morning of the robbery, perhaps

"casing" his target; and (3) Defendant demanded money, asserted that he had a gun, while gesturing toward his pocket with his right hand, and uttered numerous threats that he would shoot the bank teller. Even in light of his physical limitations, Defendant's "loud and serious" statements that he had a gun and his numerous threats to shoot the bank teller are more than sufficient evidence to support a jury finding of intimidation. *See United States v. Lajoie*, 942 F.2d 699, 700-01 (10th Cir. 1991) (handing a bank teller a note claiming to have a gun is sufficient evidence of intimidation); *Bishop*, 890 F.2d at 219-20 (same). Although Defendant left the bank without taking any money, his acts strongly corroborate his intent to rob the bank. There was sufficient evidence to support a conviction of attempted bank robbery under 18 U.S.C. § 2113(a).

**B. Sentence Enhancements**

Under the United States Sentencing Commission, *Guidelines Manual*, § 2B3.1, Defendant's base offense level for his robbery conviction was 20. The sentencing court increased his base level by two levels because "the property of a financial institution . . . was an object of the offense," USSG § 2B3.1(b)(1), and another three levels because "a dangerous weapon was brandished or possessed," USSG § 2B3.1(b)(2)(E), for a total offense level of 25. Given Defendant's criminal history category of II, the guideline sentencing range was 63 to 78 months. *See* USSG § 5A. Defendant was sentenced to 70 months' imprisonment.

Without the enhancements, Defendant's sentencing range would have been 37 to 46 months. *See id.*

In applying the financial-institution enhancement, the sentencing court stated: "The jury in this case determined that Mr. Dean's intent was to take the property of the bank and found him guilty of the instant offense beyond a reasonable doubt." R. Vol. III at 9. Regarding the enhancement for brandishing a dangerous weapon, the court relied on trial testimony indicating that "the defendant reached with his right hand into the left inside pocket of his sports jacket and advised Mounce that he had a gun and would blow her head off." *Id.* The court explained that "[t]he guideline enhancement pursuant to 2B3.1(b)(2)(E) does apply when a defendant creates the impression that they possess an object capable of inflicting death or serious bodily injury." *Id.* at 9-10; *see* USSG § 2B3.1, cmt. n.2; *United States v. Farrow*, 277 F.3d 1260, 1268 (10th Cir. 2002) ("a concealed hand may be an object which potentially triggers the three-level enhancement under § 2B3.1(b)(2)(E)").

In his appellate brief Defendant contends for the first time that the district court committed error under *Blakely* by enhancing his sentence based on facts not proved beyond a reasonable doubt. After briefing in this case the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005). We have identified two types of *Booker* error: (1) constitutional *Booker* error existing when "judge-found

facts, other than those of prior convictions, [are relied upon] to enhance a defendant's sentence mandatorily," *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005); and (2) nonconstitutional *Booker* error, occurring when the sentencing court applies "the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction," *id.* at 731-32. Here, we have one non-constitutional error and one constitutional error.

Defendant contends that imposition of the two-level financial-institution enhancement, which is applicable when "the property of a financial institution . . . was an object of the offense," USSG § 2B3.1(b)(1), was error because he did not admit to the enhancement and the jury made no findings to support the enhancement. Such error would be constitutional error, but we see no error. For the jury to find Defendant guilty of attempted bank robbery, the instructions required it to find beyond a reasonable doubt that "[D]efendant attempted to take from a person or the presence of a person money belonging to, or in the care, custody, control, management, or possession of a federally insured bank." R. Vol. I, doc. 22. Thus, the essential facts underlying this enhancement were found beyond a reasonable doubt by a jury. In contrast, the three-level enhancement for brandishing or possessing a deadly weapon was based on judge-found facts and is

therefore constitutional *Booker* error. *Gonzalez-Huerta*, 403 F.3d at 731. As for nonconstitutional *Booker* error, there is no question that the sentencing court acted on the assumption that the Sentencing Guidelines were mandatory. Thus, this case presents both types of *Booker* error.

These errors, however, were not brought to the sentencing court's attention. Although Defendant contested both his sentence enhancements, he did not raise an argument based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in district court. (*Blakely* had not yet been decided.) Accordingly, we review for plain error. *Gonzalez-Huerta*, 403 F.3d at 730. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 732 (internal quotation marks omitted). Defendant must satisfy all four requirements. *Id.* The first two prongs of plain-error analysis are clearly satisfied here. *Id*. But Defendant fails on the fourth prong, making it unnecessary to address the third.

Under the fourth prong, remand for resentencing is not required if "evidence in the record demonstrates that the district court would impose the same sentence even under an advisory Guidelines system." *United States v. Lawrence*, 405 F.3d 888, 908 (10th Cir. 2005). Factors to consider in this inquiry may include, but are not limited to, (1) statements indicating the district court's

satisfaction with the guideline sentence, *United States v. Magallanez*, __ F.3d __, 2005 WL 115913 at *9 (10th Cir. May 17, 2005); (2) sentencing above the minimum of the applied guideline range, *Lawrence*, 405 F.3d at 908; (3) rejection of arguments for downward departures, *id*; and (4) the weight of the evidence supporting the enhancement. *Magallanez,* 2005 WL 1155913 at *9.

Although Defendant did not request a downward departure, the other three considerations weigh against remanding for resentencing. First, after sentencing the Defendant the court stated: "I find no reason to depart from the range called for by the application of the guidelines." R. Vol. III at 18-19. Second, despite defense counsel's arguments at sentencing for consideration of Defendant's physical limitations, the court refused to impose the minimum sentence and set the sentence at 70 months, near the midpoint of the applicable guideline range. Finally, there is no real dispute concerning the factual basis of the enhancements. In particular, the sentencing court determined that Defendant reached his right hand into the left inside pocket of his jacket, claimed to have a gun, and threatened to blow the teller's head off. This was consistent with the only eyewitness testimony at trial. Defense counsel at sentencing argued that Defendant could not have manipulated his right hand in this manner because he had his cane in that hand; but at allocution Defendant himself undermined this argument by asking the court to view the film of the robbery, which, he asserted,

showed that his cane "was hanging on the counter." R. Vol. III at 15. The record "strongly suggests that even with greater latitude, post-*Booker*, to take the weight of the evidence in support of sentencing enhancement into account, the court would reach the same conclusion" regarding the proper sentence. *Magallanez*, 2005 WL 1155913, at *9. In sum, nothing in the record suggests that remand would produce a lesser sentence. Because "a remand would be an exercise in futility," *Id.* at *10, we conclude that Defendant has not demonstrated "that the fairness, integrity, or public reputation of the proceedings would be imperilled by the sentence." *Id.*

## III. CONCLUSION

For the reasons set forth above we AFFIRM Defendant's conviction and sentence.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge